for the travel and attendance of witnesses, who have come from foreign countries, for the purposes of the trial; and yet we all know, that in such cases, through the instrumentality of a court of equity (and now in many cases of a court of law), the testimony of such witnesses might be obtained upon a commission. Moor v. Adam, 5 Maule & S. 156; Tremain v. Barrett, 6 Taunt. 88; Sturdy v. Andrews, 4 Taunt. 697; Cotton v. Witt, Id. 55; and Lonergan v. Royal Exch. Assur. Co., 7 Bing. 725, 728. See, also, 2 Tidd, Prac. (9th Ed., 1828) p. 814; Tidd, New Prac. (Ed. 1837) p. 494; Bridges v. Fisher, 1 Bing. N. C. 510. Indeed, since St. 1 Wm. IV. c. 22, giving authority to the courts of law to issue commissions to take the examinations of witnesses abroad, it is still a mere matter of discretion with the court, if the witnesses are actually brought from abroad. whether they will allow the expenses of the witnesses, or only the costs of a commission. McAlpine v. Poles, 1 Cromp. & M. 795; Tidd, New Prac. (Ed. 1837) p. 494. This seems to be putting the whole doctrine upon a sound and rational foundation; and enables the courts at once to accomplish the purposes of justice, and to prevent the accumulation of unnecessary or extravagant expenses.

The rule adopted by the supreme court of Massachusetts in Melvin v. Whiting, 13 Pick. 184, 190, is manifestly a new one, then promulgated for the first time.[2] It can have no authority whatsoever here, it being a mere matter of state practice, as the courts of the United States have complete authority to adopt such practice for themselves, as they deem most convenient and proper. I confess myself not satisfied, that the state rule thus promulgated, is one, which has a very satisfactory foundation in principle, or public convenience. or general justice. At all events, this court has long held and acted upon a different doctrine; and I can perceive no just reason for changing it. I am, therefore, of opinion, that the objection should be overruled.

As to the allowance of postage paid upon the transmission of the commission to the commissioners, and upon the return thereof, after it was executed, as a part of the costs, I do not see, how that charge can well be distinguished from the other charges of executing the commission. It is a necessary part of the proceedings and expenses incurred thereby; and generally the cheapest mode of obtaining the testimony. The case of Thorndike v. Buffington [unreported], cited by Mr. Phillips in his Digest ("Costs," G, pl. 7), as having been decided in 1826, in the state court, is, to be sure, directly in point against the allowance of the charge. But I do not find that case any where reported in the printed reports; and no reasons are given for

the decision. So that we are wholly left to conjecture them. I cannot say that there appears to me any solid ground for denying such an allowance. The contrary rule may, for aught I know, be entirely in conformity to the settled practice of the state courts; and if so, it ought not to be disturbed. But it can furnish no ground to regulate the practice of this court, unless so far, as it seems adapted to the purposes of general convenience and justice. In either view, I confess myself not satisfied, that it ought to be adopted in this court.

## Case No. 11,448.

### PROUTY v. RUGGLES.

[See Case No. 11,447.]

## Case No. 11,449.

### The PROVIDENCE.

[9 Ben. 188.] [1]

District Court, E. D. New York. July, 1877.

COLLISION IN HELL GATE—FOLLOWING VESSEL.

A steamboat, the P., following another steamboat on a flood tide, overtook her near the upper end of Blackwell's Island. Several tows were met, the P. crossed to the south channel as the other steamboat was passing down the channel towards the end of the island, and in crossing her bows came in collision: *Held* that the P. was in fault, being the following vessel, for not stopping when she could easily do so, to allow the other vessel to get ahead enough for the P. to pass under her stern in safety.

In admiralty.

BENEDICT, District Judge. This action is to recover for damages sustained by the steamboat Bolivar in a collision with the steamer Providence on the 17th day of September, 1875, near the upper end of Blackwell's Island. At the time of the collision the tide was flood and the weather clear: both vessels were bound to New York, the Providence being much the larger and faster of the two boats. The Bolivar entered the Gate first, and as she turned Hallett's Point the Providence passed across her stern, taking the main ship channel around Great Mill Rock while the Bolivar kept down between the Long Island shore and Flood Rock. When the Providence opened out above Mill Rock, she met a tow then off Little Mill Rock, which she passed to port, at the same time slowing down. After passing this tow the Providence was opened again, and then met another tow coming up about abreast of Horn's Hook. This tow gave two signals, and accordingly the Providence kept to port, and then instead of taking the north channel by Blackwell's Island kept on for the south channel. At this time the Bolivar was proceeding down below Flood Rock, so that the

---

[2] White v. Judd. 1 Metc. [Mass.] 293. affirms the same rule as to the travel and attendance of parties in suits.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]